We're on for oral argument in the matter of SEIU Local 121RN v. Los Robles Reg'l Medical Ctr. Case number 1955185. Each side has 15 minutes and I will basically keep you to your time. If you are the appellant, the 15 minutes also includes any time that you wish to reserve for rebuttal. You're responsible, you should be able to see a clock, you're responsible for keeping track of your time. However, if you tell me how much time you would like to reserve, I'm looking at that and I'll try to remind you to get to that point. And if you are in the middle of a question that's being asked by the court, please continue to answer those questions. I will basically keep you to the time, but as long as my colleagues continue to have questions, even if they're really hard questions, you have to stay and finish and answer them. So if the appellant is prepared, then please proceed. Good morning, Your Honors. May it please the Court, I'm Stephen Black and I represent the appellant, Los Robles Regional Medical Center. The District Court's decision to compel the hospital to arbitrate the union's grievance should be overturned for two reasons. First, under the Supreme Court case in Granite Rock and other Supreme Court case law, the decision as to who decides the arbitrability dispute should have been made by the court and not by an arbitrator. Second, because the plain language of the collective bargaining agreement's arbitration provision excludes from its scope safety and staffing disputes such as the one encompassed by the union's grievance, the court should declare that the grievance is not arbitrable. With respect to the first question, as to who decides arbitrability disputes, the rule is well settled. A court, not an arbitrator, must decide arbitrability disputes unless there is clear and unmistakable evidence that the parties agreed otherwise. In this case, it is undisputed that the collective bargaining agreement is silent as to the issue of who decides arbitrability disputes. Moreover, the record is devoid of any affirmative evidence that the hospital, either by its conduct or its bargaining history, agreed to submit arbitrability disputes to an arbitrator. Don't we need to address head-on what's the effect of Granite Rock on our Ninth Circuit precedent, Desert Palace? I mean, we've got the interaction of first options, Granite Rock and Desert Palace, and that hasn't really squarely... If you can reconcile Desert Palace with Granite Rock, then I think you have a more difficult argument to make. If you can't reconcile, then would you agree with me on that, or how do you propose to... It hasn't really been dealt with head-on in this circuit. I think Judge Okuda wrote a dissent where she said she thinks that, but it's a dissent. Correct, Your Honor. It's not a decided issue, and frankly, that is one of the issues that we are asking the court to decide today. I do not believe that there is any way to reconcile the Supreme Court's holdings in AT&T, first options, and Granite Rock with the rules set forth in Desert Palace. In first options, the Supreme Court conclusively held that silence in an arbitration agreement as to whether or not the parties agreed to arbitrate arbitrability disputes is not sufficient. There has to be some affirmative or explicit agreement evidencing the parties' agreement to arbitrate arbitrability disputes. Absent any such evidence, the issue must be decided by a court and not by an arbitrator. In Desert Palace, the Ninth Circuit reached a different result in a labor context and held that first options, which was decided in the commercial context, did not apply. However, the rationale for that decision was simply that in a labor context, the policy considerations favoring the resolution of disputes by arbitration was sufficient to serve in place as that clear and unmistakable evidence. So unless the parties to a labor agreement affirmatively carved out and stated that a court should decide arbitrability disputes, then under the Ninth Circuit's view in Desert Palace, a broad arbitration agreement was sufficient to allow an arbitrator to decide arbitrability. In Granite Rock, the court said that that distinction between analyzing arbitrability differently in a labor context and in the commercial context was incorrect. But like Granite Rock, though, neither Granite Rock nor first options dealt directly with the so-called delegation question. So why should we read those cases as requiring us to overrule a decision of a prior panel that did deal with that issue? Because, Your Honor, in Granite Rock, it explicitly said that its analysis, which would pertain to the formation question, also addressed the question of delegation. And so the fundamental argument as to whether or not there's an agreement to delegate the issue to an arbitrator must be decided the same way. Specifically, there must be an affirmative, explicit evidence of an agreement to arbitrate arbitrability disputes, and that simply is not present. Is it dicta or is it the holding? I believe it's the holding, Your Honor. It discusses the specific framework by which arbitrability disputes must be decided. Those arbitrability disputes, as well established, apply not only to the question of whether or not a particular dispute falls within the scope of an arbitration agreement, but also the fundamental question of whether the parties have agreed to arbitrate arbitrability disputes. Well, what if it, counsel, what if it is dicta? What do we do with it even if it's dicta? Even if it's dicta, Your Honor, I think you can look at other Supreme Court precedents to realize that the Desert Palace ruling is simply inconsistent with the framework established by the Supreme Court for determining these arbitrability decisions. Even if we look back as far as AT&T versus communications, the fundamental issue was who should decide the arbitrability question. The court determined that the district court and the Seventh Circuit incorrectly held that that decision should be made by the arbitrator, and it remanded the matter to go back to the district court. The same result should apply in this case. Are you saying that we should remand and let the district court do it in the first instance, or are you saying that we should do it here and you should just win outright? What are you saying? I'm saying that AT&T, it appears that the proper result should be to remand the issue back to district court. However, if this court decides that the record is sufficiently complete to analyze the specific issue as to whether or not the union's particular grievance falls within the scope of the CBA's arbitration provision, we believe that there is sufficient evidence for the court to roll in the hospital's favor on that issue as well. Do you believe the Ninth Circuit, our court, and Desert Palace, was it applying the clear and unmistakable standard? I believe that they thought they were, but I believe that they misapplied that argument. Effectively, in Desert Palace, the court said that in light of the policy considerations underlying labor arbitrations, that the failure on the part of the parties to specifically delegate to judges the decision as to whether to make arbitrability decisions, that that constituted clear and unmistakable evidence that the parties wanted an arbitrator to decide it. And frankly, that is simply inconsistent with the Supreme Court's case law, both consistently in AT&T, First Options, and Grand Prax, that clear and unmistakable evidence requires affirmative act by the parties to delegate that issue to arbitrators. Indeed, the fundamental question, whenever we're looking at arbitrability questions, is what did the parties agree to? And the issue with having the Ninth Circuit case law in Desert Palace stand as is, is it undermines the nature and the policies that it's trying to implement. Specifically, if you look at AT&T, it says that allowing an arbitrator to decide his or her own jurisdiction only discourages parties from entering into arbitration agreements in the labor context, because parties will not want to leave to an arbitrator to decide by his or her whim what can be decided by him. What we need is to ground the agreement, ground the dealing, and the relationship, and the actual collective bargaining agreement, and only delegate to arbitrators those disputes that the parties have agreed to delegate to them. That is not the Ninth Circuit's holding in Desert Palace, and that is why Grand Prax, First Options, and AT&T should control the case. If we believe that Desert Palace can stand and it's reconcilable, do you lose? Yes. The arbitration agreement in our case is fundamentally similar to the arbitration agreement in Desert Palace. However, there is still no evidence that Desert Palace should remain good law. I appreciate your candor on that point, because I need to track myself in terms of what I think is appropriate here. Thank you. Thank you. With respect to the second issue, again, the hospital's position is that the issue as to whether or not the grievance in this case should be remanded back to the district. However, if this court decides to address that issue, we would ask that the issue be decided in the hospital's favor for these reasons. It is undisputed that the collective bargaining agreement excludes from the arbitration provision staffing disputes and safety disputes. There is no dispute on the part of the union that the allegations in the grievance pertaining to whether or not the hospital is violating the nurse-to-patient ratio mandated by Title 22, and whether or not the general practice of assigning patients requiring remote telemetry monitoring to the medical surgical unit was an unsafe work practice, that those issues are not arbitrable. Do they say that? They call it. Well, I can't speak for anyone else, but I think your argument sort of makes sense on the safety. But they also, in my understanding, is that it includes assignment-related training. Wouldn't ascertaining whether the training must include telemetry competencies involve interpreting this article? The difference, Your Honor, is that there is a way that the union could grieve this issue such that it could be arbitral under Article 64, and the hospital agreed to arbitrate the narrow issue as to whether or not the practice in question violated Article 64. However, what the union clarified prior to this petition being filed was that the issue that it was seeking to arbitrate was not whether or not the hospital is providing the training required by Article 64, but rather whether the hospital was ensuring the nurse's competency, which is not covered by Article 64. Rather, that obligation is covered by Title 22 of the California Code of Regulations, which is separate and apart, which is not arbitrable, because there's no agreement between the hospital and the union to arbitrate the hospital's compliance with Title 22. So therefore, because the duty that is allegedly breached arises from the regulation and not from the collective bargain agreement, the dispute is not arbitrable. Okay, did you want to reserve some time for rebuttal? Yes, Your Honor. All right. Is that okay? Do either of my colleagues have any questions right now? Okay. All right, we'll reserve the balance of your time. All right. Okay. Good morning, and I've been waiting to hear you pronounce your name. Good morning, Your Honor. May it please the Court, Jason Wojciechowski of Pushkotly for the petitioner, SEIU Local 121RN. I think there's one point to highlight on each of the two issues. You're not as loud as I would like. Is there a way you can get a little closer to your mic? I think I'm sort of right up on my computer. It might just be the mic is not. Okay. Can everyone hear okay? Okay. They can hear. It definitely seems a little wavering on that. So, the arbitrability issue here is for the arbitrator because this court continued to rely on the Desert Palace analysis after Granite Rock in the NSYNC show productions case. So, this panel is bound to continue following that rule until the court sitting on Bonk holds otherwise. NSYNC distinguished Granite Rock in footnote nine of that case in a way that encompasses. Go back on that. Go back on that. Sure. All right. You say that we can't consider whether Granite Rock undermines Desert Palace unless we go on Bonk? If NSYNC has considered this issue and NSYNC is a post-Granite Rock case, then there would be no intervening Supreme Court decision between NSYNC and this case, such that I think this panel's consideration of the Granite Rock issue wouldn't be proper, and that would be for on Bonk. Does NSYNC stand for the proposition that Desert Palace is still good law? Does it squarely stand for that proposition? I don't think the issue was specifically litigated, but I think NSYNC does stand for that proposition. NSYNC relies on interstate distributor, and interstate distributor is in. So, we have Desert Palace, and we talk about Desert Palace, but Desert Palace is really a line of cases going back arguably as far as the Los Angeles paperback in 1965, and including interstate distributor, including a New England mechanical, including laborers versus ferry. So, all of these cases are in that line, and NSYNC specifically relies on and follows interstate distributor, and I don't see a way that Granite Rock could overrule Desert Palace without also overruling interstate distributor. I don't think they're reconcilable that way, and I think this case, and NSYNC does reconcile itself with Granite Rock. It distinguishes Granite Rock by pointing out that this is not a formation case. NSYNC was not a case about contract formation, which Granite Rock was. So, you're saying that NSYNC distinguished Granite Rock? Is that what you're saying? Yes. Does it mention Granite Rock NSYNC? Yes. In footnote 9, I believe, of NSYNC, it refers to Granite Rock, and it describes Granite Rock as talking about formation cases and enforceability or application of the arbitration clause cases. It refers to those as sort of scope issues, scope arbitration clause. Neither NSYNC nor this case is a formation case, and I think that is probably the most important distinction from Granite Rock because a formation dispute inherently does not arise under a contract, because the question is whether there is a contract, whether there ever was. Council, wait a second. So, Granite Rock, it seems like in Section 2 of Granite Rock, it stands for two different things. It has the formation point that it makes, where it says it's well settled that in commercial and labor cases, it has the formation issue, but it also has the issue that it says it's well settled in commercial and labor cases whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination. And then it goes on essentially to say that's true in labor cases as well as in the commercial context. And so, I don't think that, you know, Granite Rock was primarily a formation case. It got to both of them. I mean, it says right at the beginning. In fact, it goes on to say these principles, these two principles, would need to dispose of this case if the formation issue here were typical. So, those two principles. So, it's talking about formation, yeah, but it's also talking about the broader principle that arbitrability is typically an issue for judicial determination. I think it talks about that, but as the court discussed with my colleagues, that I think is dicta in that case. Parties in Granite Rock agreed that the arbitrability issue was for the court. If it was dicta, why, I mean, it's a long discussion. And this is not just like two sentences in passing. It's a long discussion. In my Westlaw printout here, it takes like, I've got stuff highlighted for three pages of Westlaw where it says things like, our cases invoking the federal policy favoring arbitration of commercial and labor disputes apply to the same framework, clearly and unmistakably. It says, accordingly, we've never held that this policy overrides the principle, the labor policy, the policy in labor of favoring arbitration, overrides the principle that the court may submit to arbitration only those disputes the parties have agreed to submit. Nor have we held that courts may use policy considerations as a substitute for party agreement. That's exactly, when I read Desert Palace, that's exactly what the court did in Desert Palace. It said, yeah, I know the Supreme Court has said we have this, you have to have this clearly, parties have to clearly agree to arbitrate this. But in labor cases, because we have, we essentially have a presumption, and therefore that somehow meets the clearly. I don't really quite understand the logic in Desert Palace, but the court has said, nor have we held that courts may use policy considerations. So there's, I mean, it's a lot of dicta. I mean, I don't know, the court just, I guess you're, what is, it's a lot of dicta. So the issue, when the court in Granite Rock is discussing this don't use policy issues to override agreement, I believe that it was because the parties, or the union, or the party that wanted arbitration referred to policy and asked the court to apply labor policy. What I think Desert Palace did, what I think this court in Desert Palace did, is apply the clear and unmistakable standard, which came from AT&T, which is a labor case, and apply that to arbitration clauses, and look at the arbitration clauses that it referred to as broad, and I don't think that characterization matters, I think the language of the arbitration clause matters, and looks at this arbitration clause and finds this type of arbitration clause is clear and unmistakable evidence that the arbitrability issue was submitted to the arbitrator, and here's why, and gave some policy reasons for why, but was tying that arbitrability, or sorry, that arbitration language back to the clear and unmistakable standard of AT&T, and then distinguished first options, which reiterated the clear and unmistakable, and in first options, I think it's important to remember that the alleged clear and unmistakable evidence to submit to arbitrate arbitrability was that these two individuals who had never signed a contract with an arbitration clause showed up to arbitration. The Supreme Court said that's not, showing up to arbitration and contesting arbitrability is not clear and unmistakable evidence that you submitted arbitrability to arbitration. That's a way to distinguish first options, counsel, but it's not a way, I mean the Supreme Court later in Granite Rock cites first options over and over again as standing for this idea that courts must resolve any issue that calls into question the formation or applicability of specific arbitrability clause, and also that you cannot use a policy favoring arbitration to meet the clearly and mistakably requirement. That's what the court says, and that's exactly what it looks like to me the court did in Desert Palace, our court. I think there's a, I understand why it looks like the court did that, but I don't think that is necessarily the best reading of Desert Palace, and I think that's the reason NSYNC continued to follow that line of cases, because NSYNC looks at the arbitration clause in that case and finds that the termination dispute requires analyzing the evergreen clause in that contract, and the same type of analysis would happen here. The arbitration clause here submits disputes or disagreements involving interpretation, application, or compliance with specific provisions of this agreement. The arbitrability dispute here is what type of grievance is this really? The union says this is an in-service education dispute, it's a training dispute. The hospital, the employer says, no, it's really a staffing dispute. It's really a Title 72 dispute. It's really all of these things, and it is for the arbitrator to look at the staffing clause, to look at the safety clause, to look at the grievance, which arises under the contract, and determine what kind of dispute is this really. If we say that Granite Rock tore the daylights out of Desert Palace and that Desert Palace is no longer a good law, do you lose? No, Your Honor. First of all, we don't think remand is necessary, and the substantive arbitrability issue, the question of whether the grievance is arbitrable, was fully litigated below, was fully briefed to this court. If it went down and came back up to this court, there would be de novo review. So there's no reason if this court is going to reach, if the court thinks the court should reach arbitrability, this court shouldn't do that. And the plain language is very straightforward here. The grievance cites Article 64. The grievance refers to competencies, which is a training issue. And the contract never excludes Article 64 from arbitration. So it's pretty straightforward. And I think what the employer has... Okay, so if we proceed to decide that the dispute is indeed arbitrable, could we skip over addressing whether Granite Rock superseded Desert Palace? I mean, certainly this court has done that before. That's what the court did in the Single Springs case. The Granite Rock issue was fully litigated. It was argued extensively. And the court, I think, said, assuming the employer is right, and then reached the arbitrability question. Counsel, I don't understand how we could do that. I don't understand how they did that in Single Springs. Because, you know, in like a qualified amending context, which you're probably all familiar with, you can assume like that the officer's conduct wasn't reasonable, but in the second part say that it wasn't clearly established. And the reason you can do that is because if you find that it wasn't clearly established, whatever result you reach on the first one makes no difference. You still reach the same. But in our case, if we assume that... that we get to decide this, and then we're not going to decide that we get to decide it. In other words, we're going to assume something that's inconsistent with what you're arguing in finding precedent, Desert Rose, right? We're going to assume Desert Rose doesn't apply. So we jump over that, and then we interpret it and say, we think this is arbitrable. So we address the arbitrability question and say it's arbitrable. So now we send it to the arbitrator. And the arbitrator says, he sits down and he says, I mean, in theory, he or she could sit down and say, on that first question, I think that the panel was wrong. I don't think they get to decide. They didn't decide it. I'm going to follow Desert Palace because I'm a good arbitrator. I'm going to follow binding Ninth Circuit precedent. And he decides he gets to decide it instead of our assumption. And then he decides that the thing isn't arbitrable. So it's outcome determined. I don't see how we can assume it and reach the second question. It's not the kind of case where we can do that. I'm going to be honest with you. I don't have a great answer to that. I was surprised when the prior panel in Shingo Springs took that approach. I mean, they found a way to do it. I suppose this court could, too. I think the best answer is that if this court is sending the matter back down to the arbitrator one way or another, and then it's just defining which issues the arbitrator gets to, it's deciding before it ever gets to the arbitrator what's arbitrable, what's not. You know, perhaps that's... The arbitrator could ignore us, right? I think the arbitrator could say, I'm actually going to decide what we call the delegation question. I'm going to decide the delegation question because Desert Palace says I get to decide it. I'm not going to, and I'm going to reach a different conclusion. They assumed that they, the Ninth Circuit panel assumed that they could decide it. They didn't decide they could, they just assumed it, so that's not binding on me. So I'm willing to decide under Desert Palace that I get to decide that. And now when I decide it, I reach the arbitration, and I'm going to reach the opposite conclusion at the Ninth Circuit, and he could send it back to us. I think that issue would have to be placed before that arbitrator by the parties. The union, in that instance, I think would have no interest in placing that issue before the parties, before the arbitrator because the court has already decided it's arbitrable, so the union doesn't want to argue over arbitrability anymore, and the employer has to. I guess at the end of the day it doesn't matter so much how it turns out, it just matters whether or not logically we can assume for the sake of argument something that's the first question and then reach the second question, if how we assume that first question is outcome determinative, or could be. Right. I mean, I think that's right. I'm struggling to answer that question, and I apologize for that. But I do see that I've run over my time in being unable to answer that question satisfactorily, unless the panel has other questions. Well, I can't answer it either, so we're on the same page. Yeah, you don't have to feel like you failed. All right. Do any of my colleagues have additional questions? All right. Thank you. All right. We'll go back for rebuttal. Perhaps on the... So we'll leave Mr. Wojciechowski. Did I say that close, kind of? You are, Stephanie, Your Honor. Close to Mr. Stephan... Can you answer the NSYNC question that was posed, that he seems to think that would be binding on us, that it's already been decided by the Ninth Circuit, and the only way to reach Granite Rock here as to Desert Palace would be for this panel to call this en banc. Thank you, Your Honor. In NSYNC, the court explicitly held that because that appeal involved the party's dispute relating the expiration or termination of the CBA, cases involving contract formation and disputes regarding the scope of arbitration provision are distinct. So our position, Your Honor, is that Granite Rock is distinguishable from NSYNC because it involved a formation issue and not a question as to whether or not the party's dispute concerned the expiration or termination of the CBA. Likewise, this case involves the dispute regarding whether or not a particular grievance falls within the scope of the party's arbitration provision. So therefore, it, too, is distinguishable from NSYNC, and this court can reach the issue presented by this appeal without an en banc decision. Okay. With respect to the second question as to whether or not this grievance is arbitrable, the issue is not that the hospital is trying to define the nature of the grievance for the union. Rather, we are simply taking the union at their word. The hospital explicitly offered to arbitrate whether or not the practice in question violated Article 24. The union rejected that offer to the extent they couldn't also argue that there were implications of Title 22, which, again, is not part of the CBA and is not part of the arbitration. So if we are simply looking at whether or not this practice violates Article 64, we have no issue arbitrating that issue. The problem, however, is that the union insists on relating issues having to do with Title 22 and other non-arbitrable issues into this grievance. And for those reasons, because there is no clear and unmistakable evidence that the hospital ever agreed to arbitrate Title 22, safety disputes, or staffing disputes, the grievance in question is not arbitrable. Thank you, Your Honors. Any additional questions by my colleagues? All right. There does not appear to be, so this matter will stand submitted. I want to compliment both counsel on their arguments. And there are instances that, just because you can't answer a question or you have to concede an issue, that the panel does not necessarily... That doesn't mean that you don't know your case. All right? We asked you some difficult questions, and sometimes, I think, as Judge Van Dyke said, we're looking for some of the answers that are difficult questions. And so I don't think... And you were both very well-prepared, and I don't think the fact that you either conceded an issue or you found a question difficult, I don't think that in any way detracts from the level of your advocacy. And we appreciate your good work. Thank you. This matter will stand submitted. This court is now in recess, and we're going to conference at this point. So we will wait until people... As much as I know that everyone would love to listen to our conferences, you don't get to. So we're going to get you off the line. And that would be one of those things that would be a nightmare in videoing. But it would be interesting for you. But anyway, so we're going to get you off the line and then do our conferencing. Have a good day. Thank you. This court stands in recess.
judges: Callahan, Lee, Vandyke